**SO ORDERED.**

**SIGNED this 30 day of June, 2016.**

*Stephani W. Humrickhouse*

**Stephani W. Humrickhouse**
**United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

IN RE:                                                    CASE NO.

**DAVID W. KING,**                                  **14-06010-5-SWH**

    **DEBTOR**

### ORDER DENYING OBJECTION TO CLAIM BASED ON ASSIGNMENT OF AGREEMENT FOR CONSULTING SERVICES

In an order entered on June 15, 2016, the court denied debtor David W. King's objection to the claim filed by Edward W. Brantley ("Brantley"), to the extent the objection was based on Brantley's purported assignment of that claim to a third party, First Mount Vernon Industrial Association ("FMV"). The court stated in the June 15 order that it would set out the reasoning behind that determination in a subsequent order, and that discussion is set forth below.

The matter before the court is whether the claim, filed by Brantley in the unsecured amount of $5,000,000 (Claim No. 21), should be denied because the claim was allegedly assigned to FMV pursuant to an Agreement for Consulting Services ("Consulting Agreement"). In assessing the debtor's objection to claim, the court identified a threshold issue of whether Brantley is in fact the holder of Claim No. 21 in light of the purported Assignment. Should the court decide that Brantley is not the holder of the claim, there would be no reason for a further hearing on the matter and the debtor's objection to claim would be sustained. A hearing was held on November 30, 2015, and the

parties submitted memoranda on January 8, 2016.  An additional hearing was held on April 27, 2016, and the court took the matter under advisement.  For the reasons that follow, the court finds that the claim arising from the Consulting Agreement was not effectively assigned to FMV and thus Brantley may assert such claim, once proven, in this case.

## BACKGROUND & PROCEDURAL POSTURE

Edward Brantley is a contractor and developer who contemplated development of a large parcel of real property on Thornton Road in Raleigh, North Carolina. Development of the property would consist of a residential portion and a portion to be used as a landfill and transfer station. Brantley aggregated the property in an entity known as Dynasty Holdings, LLC ("Dynasty"). Brantley sought to develop a portion of the property as a residential subdivision and obtained funding therefor from a Virginia lender, FMV.  FMV required that title to the properties it owned be held in a numbered "ProDev" entity, and ProDev VIII, LLC ("PD8") was formed to hold title to the portion of the land on which the residential subdivision was to be built.  Brantley was 40% owner and managing member of PD8, and FMV employee Paul Fogle was a member and 60% owner.

In 2007, Brantley and the debtor, who was involved in the landfill and recycling business, entered into an agreement involving the real property and its proposed uses.  Brantley focused on the residential subdivision portion of the property, while the debtor intended through his entity, Shotwell Transfer Station, Inc. ("Shotwell"), to conduct waste operations on the remainder of the real property.

On December 14, 2007, Brantley, the debtor, and debtor related entities, entered into the Consulting Agreement. Proof of Claim, Ex. A at pp. 5-11.  First, the Consulting Agreement

effectuated a land-swap, wherein Dynasty, as title holder of the remainder of the property, acquired an additional portion of property held by PD8. Dynasty now held title to the property required for the debtor's contemplated waste operation, while PD8 held title to the property for Brantley's contemplated residential subdivision. The Consulting Agreement conveyed Dynasty to the debtor. Shotwell was to control and be entitled to all profits from the waste operations. Brantley simultaneously acquired real property owned by the debtor.

Secondly, the Consulting Agreement provided that Brantley would provide no more than 10 hours per month of consulting services to Dynasty and Shotwell (collectively, the "debtor's entities"), relating to the waste operations, including communication with adjoining landowners. Dynasty and Shotwell agreed to pay Brantley an annual percentage of their "Available Cash Flow," not to exceed 50%. Additionally, the parties contemplated a "final payment," whereby Dynasty agreed to pay Brantley at the closing of any sale of Dynasty, an additional payment of 50% of the "Available Cash Flow From Sale," not to exceed $5,000,000, as well as 9% of the taxable income occurring by operation of Brantley's receipt of his share of the Available Cash Flow From Sale, even if that amount resulted in a payment in excess of $5,000,000. Dynasty would also pay $125,000 to FMV, and $203,000 to another of Brantley's lenders in exchange for lien releases on the New Parcel. The Consulting Agreement provided that it would terminate upon the sale of Dynasty, or deemed sale of Dynasty and payment to Brantley of the final payment. The Consulting Agreement further provided in relevant part that:

> 10. All dealings among Dynasty, Shotwell, and King and/or any affiliate of King shall be arms-length and at arms-length prices. Any oral or written lease between Shotwell, as landlord and Dynasty, as tenant, must be approved by [Brantley] in writing in advance of the lease agreement. [Brantley] and/or any agent of [Brantley] (such as a certified public accountant and/or attorney) shall have the right to inspect

3

any and all of Dynasty's and Shotwell's books and records with twenty-four hours' prior written notice to Dynasty or Shotwell.

15. . . . [N]o party hereto may assign any of their respective rights, privileges, or obligations hereunder without the prior written consent of the other parties hereto, which will not be unreasonably withheld. All obligations of Dynasty and Shotwell contained herein are joint and several.

Proof of Claim, Ex. A (Agreement for Consulting Services at 9).

In his testimony during the April 27 hearing, Brantley stated that in early 2008, he needed additional funds to pursue development of the subdivision. He sought a $250,000 loan from FMV, in return for which he agreed to assign to FMV his expected proceeds from the Consulting Agreement. On February 4, 2008, Brantley executed a document from FMV, captioned Assignment of Proceeds ("Assignment"), which proposed that Brantley, as assignor, would assign "any and all proceeds accruable and payable to Assignor under subject [Consulting Agreement]" to FMV, as assignee. Debtor's Memorandum Regarding Assignment of Edward Brantley's Claim to First Mount Vernon, LLC, Ex. A (Assignment of Proceeds) [BR Docket No. 261 at 13]. The Assignment specifically included:

(a) all of Assignor's right, title and interest as specified in the [Agreement] together with all promissory notes or other evidence of indebtedness; and

(b) all principal, interest or other proceeds of any kind as specified in [Agreement] (including but not limited to proceeds derived from the conversion, voluntary or involuntary, of any of the property described within [Agreement] into cash or other liquidated property).

The Assignment had an effective date of December 14, 2007, the same date the Consulting Agreement was executed, and included a warranty that Brantley had the full power and authority to make such an assignment. Brantley signed the Assignment on February 4, 2008; however, he altered it by handwriting "250,000.00 First Money Goes EB AA." Brantley testified that he returned

4

this document to FMV, and spoke to Paul Fogle on the phone about his handwritten addition, but FMV did not agree to the additional handwritten language. Ultimately, Brantley testified that FMV did not make the loan, and the deal "never happened."

For reasons outside the scope of this order, relations between Brantley and the debtor soured. On December 19, 2008, Brantley filed a claim of lien (without the aid of counsel) against Shotwell and Dynasty in Wake County Superior Court. Brantley, Shotwell, and Dynasty now agree this lien was defective and not enforceable. Subsequently, the debtor, along with Dynasty and Shotwell, filed suit against Brantley and PD8 in Wake County Superior Court in Civil Action No. 08 CVS 18522, primarily to remove the claim of lien and to clear title in order to facilitate a pending sale. The suit also alleged that Brantley breached the Consulting Agreement. Brantley counterclaimed, seeking an accounting, and alleging breach of the Consulting Agreement, breach of fiduciary duty, and frustration of his minority shareholder rights. PD8 also counterclaimed for trespass to its real property.

During discovery in the state court action, on September 10, 2010, the debtor and other state court defendants served the following interrogatories:

> 21. State whether Brantley has purported to transfer, assign or pledge the Consulting Agreement or any right (including a right to compensation) purported to have been obtained by Brantley through the Consulting Agreement. If so, identify the parties to the transaction(s), describe the consideration given by each party and identify all related documents, including correspondence, memoranda and agreements.
>
> **RESPONSE:** Brantley has agreed to transfer a portion of any proceeds he received to First Mount Vernon. There is a written agreement to that effect, which is available for inspection.

Brantley did not take part in the preparation of the initial responses (these were verified by G. Paul Fogle, Vice President and COO of FMV), but on two subsequent occasions, he verified the accuracy of the responses, including the response to Interrogatory 21.

In an order granting partial summary judgment entered on September 26, 2011, the state court declared Brantley's claim of lien deficient as a matter of law, denied any monetary or injunctive relief and dismissed the lien without prejudice. The order removed any title encumbrance potentially stemming from Brantley's claim of lien. The order also voided paragraph 8 of the Consulting Agreement, thereby removing the right of Brantley to prevent the debtor's entities from selling the property for less than $10,000,000. The order directed that the debtor and his entities could convey the subject property notwithstanding the provisions of paragraph 8. Debtor's Response To Edward Brantley's Response To King's Objection To Proof Of Claim, Ex. A (Order Granting Partial Summary Judgment) [BR Docket No. 237 at 4-5]. The remainder of the claims against Brantley were dismissed by King, without prejudice, on May 15, 2012. Brantley dismissed his counterclaims, but later re-filed them in a second state court case, which is currently stayed pending this bankruptcy case.[1]

Unbeknownst to Brantley, a mutual release and settlement agreement ("Settlement Agreement") was executed on November 22, 2011, between King, Dynasty, Shotwell, FMV, and ProDev. Therein, FMV and ProDev as defendants, and King, Dynasty, and Shotwell as plaintiffs, agree to terminate their interest in the Consulting Agreement as to each other, to the extent permitted by law. The Settlement Agreement specifically excludes Brantley as a party or intended beneficiary. Moreover, it states that "[i]f that cancellation is for any reason ineffective, in whole or in part, FMV

---

[1] Brantley v. King, et al, No. 14 CVS 1871, Wake County Superior Court.

hereby immediately assigns to King all of FMV's remaining rights and interests arising from the Consulting Agreement and the Assignment of Contract[.]"  Debtor's Response To Edward Brantley's Response To King's Objection To Proof Of Claim, Ex. C (Settlement Agreement) [BR Docket No. 237 at 8-13].

Also unbeknownst to Brantley, on or about June 13, 2012, Shotwell and Dynasty sold some or all of the assets of the Thornton Road transfer station to a third party for $4,506,430.35, including accounts receivable and disposal fee prepayment. Debtor's Response To Edward Brantley's Response To King's Objection To Proof Of Claim, Ex. D (Accounting) [BR Docket No. 237 at 15].

Brantley filed the second state court action against the debtor, Dynasty, and Shotwell in Wake County Superior Court on February 11, 2014.  (Brantley v. King, et al., No. 14 CVS 1871). Proof of Claim, Ex. A, (Complaint).  In his complaint, Brantley again asserted causes of action against King, Dynasty, and Shotwell including his request for an accounting, and allegations of frustration of shareholder expectations and breach of fiduciary duties, and breach of contract.  After learning of the June 2012 sale, Brantley amended his complaint in August of 2014 to include claims of entitlement to shares in proceeds from the sale and potential lease payments being paid to the debtor and his entities, pursuant to the Consulting Agreement. Proof of Claim, Ex. C, (Amendment to Complaint).

On October 15, 2014, the debtor filed a petition under chapter 11 of the Bankruptcy Code. An order in the state court action entered November 21, 2014 addressed the parties' then ongoing effort to settle.  Brantley was encouraged to give notice to debtor-defendants of his request to inspect their books and records, as directed by the Consulting Agreement.  The court noted that the parties could agree to a process for inspecting the records themselves, or in court-ordered mediation.  Proof

of Claim, Ex. E, (Order).  That order also noted that all defendants (the debtor and his entities), denied that funds were owed to Brantley under either the "Available Cash Flow" or "Available Cash Flow From Sale" as provided by the Consulting Agreement.  On January 19, 2015, Brantley's counsel emailed counsel for the defendants, indicating that he had retained an expert to review the records of Shotwell and Dynasty and asking for a date and time the documents would be available for inspection.  Proof of Claim, Ex. F, (Email from Andy Penry to Walter L. Tippett, Jr.).  On February 9, 2015, the state court stayed the case as to all three defendants in light of the debtor's bankruptcy case.  Proof of Claim, Ex. G, (Order Staying Proceedings).

On February 16, 2015, Brantley filed a proof of claim, in the unsecured amount of $5,000,000, the stated basis for the claim being "breach of contract."  The debtor filed an objection to claim on September 8, 2015, arguing that nothing was owed to Brantley from the debtor and that the claim should therefore be disallowed.

In his response to the objection, Brantley asserted that he had received nothing under the Consulting Agreement and had been denied his inspection and minority shareholder rights in the corporate entities because the debtor refused to provide him with an accounting.  Brantley asserts that an accounting would enable him to determine whether he was entitled to any payments, or whether the debtor had engaged in non-arms length transactions.  Brantley also requested that this court grant relief from stay to allow an accounting to occur in the state court action.  Edward Brantley's Response To King's Objection To Proof Of Claim, [BR Docket No. 213 at 1-2].

In his reply, the debtor asserted that Dynasty and Shotwell were authorized to sell their assets pursuant to the state court order allowing summary judgment.  The debtor further asserted that nothing could be owed to Brantley under the Consulting Agreement because he assigned his rights

to FMV through the Assignment, and that the Settlement Agreement included an assignment from FMV to the debtor of any rights FMV had acquired under the original Assignment (from Brantley to FMV).  The debtor argued in the alternative, that the sale of the Thornton Road property resulted in a loss of almost $4,000,000.00, such that no proceeds were owed to Brantley even if he did retain rights under the Consulting Agreement.  Finally, the debtor notes that information related to the sale was available in an accounting conducted by David Ball, CPA and that Brantley had ample time for discovery in the state court matter or through Federal Bankruptcy Rule 2004, to discover this information.

A hearing was held on November 30, 2015, pursuant to which it became clear that the validity of the Assignment was a threshold and potentially dispositive issue.  Brantley argued that the Assignment was not valid because (1) the Consulting Agreement was not assignable by its terms; (2) there was no consideration provided for the Assignment; and (3) the Consulting Agreement was a contract for "personal services," and not assignable as a matter of law.  The court took the matter under advisement and directed the parties to submit memoranda focused on this assignment issue.

In his supplemental brief, the debtor argued that the Assignment was facially valid and thus disqualified Brantley's claim.  The debtor asserted that Brantley had no defense to the facial validity of the Assignment under theories of equitable estoppel and lack of consideration.  Finally, the debtor argued that the plain language of the Assignment undermined Brantley's personal services argument. Debtor's Memorandum Regarding Assignment Of Edward Brantley's Claim To First Mount Vernon, LLC [BR Docket No. 261].

In his brief, Brantley made multiple arguments, including:

1. The assignment was never effectuated, and instead was only proposed and never agreed to.

9

2. There was no consideration for the assignment.

3. The non-contractual claims are not assigned, including Brantley's claims for breach of fiduciary duty, among others, against debtor, which are unaffected by the purported assignment.

4. The assignment is void because an assignment made in contravention of an anti-assignment clause is void, and because the debtor did not consent to the assignment in writing.

5. The document contemplates "assignment" of future, not present, proceeds, and is not an "assignment."

6. Even if the assignment is valid, the first $250,000 of [Assignment] proceeds are not assigned.

Creditor Edward Brantley's Brief In Support Of Proof Of Claim, [BR Docket No. 259].

Brantley also submitted an affidavit[2] in support of his memo that reads in relevant part:

- In early 2008, it became clear to me that development of the subdivision would cost more than the loan proceeds from FMV.
- FMV and I discussed the possibility of additional funding.
- It was suggested that security for the additional funding could be a pledge of any proceeds I received under the [Consulting Agreement]. No proceeds had yet been received, and any such receipt was conditional upon the requirements of the Agreement being met.
- A proposed assignment was presented to me and I signed it. I noted, by hand, that the first $250,000 of the proceeds would go to me.
- FMV declined to accept the altered assignment or to provide the proposed additional funding.
- The proposed assignment was never consummated.
- I did not seek or obtain debtor's consent to the assignment, and did not seek or obtain the consent of Dynasty or STS either.

Declaration of W. Edward Brantley, ¶19 [BR Docket No. 260]

On April 27, 2016 the court heard Brantley's testimony and the parties' arguments on the threshold issue of the validity of the Assignment and its effect. Brantley testified that in order to secure the additional funding he needed to complete his contemplated subdivision, and to re-route

---

[2] The court recognizes that there are inconsistences in the record as to the timing of the Assignment. While executed February 4, 2008, the Assignment has an effective date of December 14, 2007. However these inconsistences are not relevant to this order.

roads to accommodate a truck turning radius, he engaged in negotiations with FMV for an additional loan. Brantley testified that under the agreement as contemplated, FMV would put up $250,000, and he would in turn assign to FMV any proceeds due to him from the Consulting Agreement. He testified that he received a blank version of the Assignment from FMV, and that he executed the document, while also adding handwritten language reserving in himself and another consultant the first $250,000 of proceeds. He provided this agreement to FMV, as modified. According to Brantley, it was not accepted by FMV and that "the deal never happened." Overall, the general gist of Brantley's testimony was that he wanted to do the deal with FMV, did agree to assign the Consulting Agreement proceeds in exchange for the loan, but also wanted to retain the first $250,000 in proceeds.

On cross examination, the debtor's counsel focused on the language of three documents: the Assignment itself; the 2010 interrogatory response; and the 2011 verification of the interrogatory responses. Brantley testified that he did not prepare the 2010 responses, but that he had agreed to assign the proceeds, and sought to do so, but "it never happened." He acknowledged that he verified the interrogatory responses, but denied that his verifications established the enforceability of the Assignment.

## DISCUSSION

The court will first address parties' burdens of proof in the claims allowance process. The Fourth Circuit has explained the Code's "burden-shifting" framework as follows:

> [T]he creditor's filing of a proof of claim constitutes prima facie evidence of the amount and validity of the claim. 11 U.S.C. § 502(a); Fed. R. Bankr. P. 3001(f). The burden then shifts to the debtor to object to the claim. 11 U.S.C. § 502(b); [Canal Corp. v. Finnman (In re Johnson), 960 F.2d 396, 404 (4th Cir. 1992)]. The debtor must introduce evidence to rebut the claim's presumptive validity. Fed. R. Bankr. P. 9017; Fed. R. Evid. 301; [4 Collier on Bankruptcy, ¶ 501.02[3][d] (Alan N. Resnick

& Henry J. Sommer eds., 15th ed. rev. 2004]. If the debtor carries its burden, the creditor has the ultimate burden of proving the amount and validity of the claim by a preponderance of the evidence. (Footnote omitted.) Id. at ¶ 502.3[3][f].

Stancill v. Harford Sands, Inc. (In re Harford Sands, Inc.), 372 F.3d 637, 640 (4th Cir. 2004).

Brantley's filing of Proof of Claim No. 21 constitutes *prima facie* evidence of the amount and validity of his claim. By objecting, the burden shifted to the debtor to produce evidence to rebut the presumptive validity of Brantley's claim. The court finds that the debtor's introduction of the Assignment satisfies the debtor's burden of rebutting the presumptive validity of Brantley's claim, so Brantley now carries the burden of proving the validity and amount of the claim by a preponderance of the evidence. Because the validity of the Assignment created a threshold issue as to the validity of the claim, the court sought to resolve it before the claim allowance process could be continued. By an order dated June 15, 2016, the court determined that the Assignment was not valid.

While the parties addressed many aspects of the Assignment's validity and enforceability, the court's initial focus was on the more basic question of whether or not the Assignment constituted an enforceable contract. To be enforceable, the Assignment must adhere to the basic rules of contract law. This includes mutuality of assent:

[A] valid contract between two parties can only exist when the parties "assent to the same thing in the same sense, and their minds meet as to all terms." Goeckel v. Stokely, 236 N.C. 604, 607, 73 S.E. 2d 618, 620 (1952). This assent, or meeting of the minds, requires an offer and acceptance in the exact terms and that the acceptance must be communicated to the offeror. Dodds v. St. Louis Union Trust Co., 205 N.C. 153, 170 S.E. 652 (1933). Goeckel, 236 N.C. 604, 73 S.E. 2d 618. "If the terms of the offer are changed or any new ones added by the acceptance, there is no meeting of the minds and, consequently, no contract." . . . This counteroffer amounts to a rejection of the original offer. . . . "The reason is that the counteroffer is interpreted as being in effect the statement by the offeree not only that he will enter into the transaction on the terms stated in his counteroffer, but also by implication that he will not assent to the terms of the original offer." . . .

Normile v. Miller, 313 N.C. 98, 103, 326 S.E.2d 11, 15 (1985) (citations omitted).

It is undisputed that FMV's unsigned and unmodified Assignment of Proceeds constituted an offer, which is "the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." Jansen v. IBM, 454 F.3d 382, 388 (4th Cir. 2006), quoting Restatement (Second) of Contracts § 24. Brantley's signature, without more, would constitute an acceptance of that offer, and evidence a "meeting of the minds" and thus, an enforceable agreement.

However, the uncontested evidence before the court establishes that in addition to signing FMV's offer, Brantley hand wrote an additional term into the offer: "250,000 first money goes to EB AA," by which he proposed to reserve in himself and another consultant the first $250,000 of available proceeds under the Consulting Agreement.  "[C]ase law is clear that a 'meeting of the minds requires an offer and acceptance of the same terms [; and] [i]f, in his acceptance, the offeree attempts to change the terms of the offer, such constitutes a counter-proposal and thereby a rejection of the initial offer.'" Fulk v. Piedmont Music Center, 138 N.C. App. 425, 430 (2000), quoting Walker v. Goodson Farms, Inc., 90 N.C.App. 478, 486 (1988).  See also Normile, 313 N.C. at 104, quoting Restatement (Second) of Contracts § 39 (1981) ( "A counter-offer is an offer made by an offeree to his offeror relating to the same matter as the original offer and proposing a substituted bargain differing from that proposed by the original offer.").

By adding a term to FMV's offer, Brantley made a counter proposal to and rejection of FMV's original offer.  No evidence has been presented to this court to suggest that FMV ever accepted Brantley's counter proposal, and Brantley has repeatedly represented to this court that FMV never accepted his counter proposal and that the deal "never happened."  Thus, there was no

13

"meeting of the minds" between FMV and Brantley, and no contractual relationship was established by the purported Assignment. See Moore v. G&I VI Forest Hills GP, LLC, NO. COA13-3, 2013 WL 5947616 (N.C. Ct. App. Nov. 5, 2013) ("Where there is no mutual assent to the additional terms of a contract between parties, no contract has been formed as to those terms.").

The debtor's arguments with respect to Interrogatory 21, and Brantley's verification of Mr. Fogle's characterization of the exchange of proposals as an "agreement," hinge entirely on the interpretation given to the terms used in the discovery responses, and not on the circumstances of the Assignment itself. Simply stating an agreement exists cannot create a contractual relationship out of thin air. The debtor's argument that the Settlement Agreement demonstrates a ratification of acceptance on the part of FMV, is similarly unpersuasive. The Settlement Agreement did not constitute evidence that FMV ever accepted Brantley's counteroffer, and there is no evidence of any action at all by FMV in response to that counteroffer. That FMV later transferred whatever rights it had, if any, looks like legal housekeeping and the tying up of potential loose ends, but is certainly not a belated acceptance of a long stale offer.

Therefore, the Assignment did not constitute an enforceable contract, Brantley did not assign any of his rights under the Consulting Agreement to FMV, and is in fact the holder of Claim No. 21, to the extent it is proven.[3]

## CONCLUSION

For the foregoing reasons, debtor's objection to claim is denied to the extent it was based on Brantley's purported assignment of his claim to FMV. The court finds that the claim arising from

---

[3] The court will hold a hearing on the substance of the claim on July 19, 2016.

the Consulting Agreement, was not effectively assigned to FMV and thus Brantley may assert such claim, once proven, in this case.

**END OF DOCUMENT**